# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**LUIS VIZCARRONDO,**                    **CASE NO. 1:18-CV-01255**

                               **Plaintiff,**

          **-vs-**                       **JUDGE PAMELA A. BARKER**


**OHIO DEPARTMENT OF
REHABILITATION AND**                     **MEMORANDUM OF OPINION AND**
**CORRECTIONS,**                         **ORDER**

                               **Defendant.**


This matter comes before the Court upon the Motion for Summary Judgment of Defendant

Ohio Department of Rehabilitation and Corrections ("ODRC"). (Doc. No. 24.) Plaintiff Luis

Vizcarrondo ("Vizcarrondo") filed a brief in opposition to ODRC's Motion for Summary Judgment

on May 29, 2019, to which ODRC responded on June 12, 2019. (Doc. Nos. 29, 30.) For the following

reasons, ODRC's Motion for Summary Judgment is GRANTED.

## I.  Background

### a.  Factual Background

In 1988, ODRC hired Vizcarrondo, who is Hispanic, as a Correction Officer at its Northeast

Reintegration Center ("NERC"). (Doc. No. 18 at 8.) On October 30, 1990, ODRC terminated

Vizcarrondo's employment after several female inmates reported that he had solicited sexual acts

from them or had sexual intercourse with them. (*Id.* at 94; Doc. No. 18-3 at 6.) Vizcarrondo's

union filed a grievance challenging the termination decision, and the matter proceeded to a hearing.

(*See* Doc. No. 18-3.) After only one inmate testified at the hearing, the arbitrator found that ODRC

had failed to meet its burden of proof and ordered that Vizcarrondo be reinstated, but recommended

that he be transferred to a male institution. (*Id.* at 2.) Vizcarrondo refused to transfer, however, and remained at NERC. (Doc. No. 18 at 108-09.)

In 1995, Vizcarrondo was promoted to Sergeant. (Doc. No. 18-6.) A couple of years later, in 1997, he was then promoted to Lieutenant. (Doc. No. 18-7.) Over the next ten to fifteen years, ODRC asserts that Vizcarrondo did not distinguish himself as a Lieutenant. (Doc. No. 24 at 2-3.) Specifically, ODRC submitted evidence that Vizcarrondo received several coaching sessions and reprimands with regard to attendance and tardiness issues. (Doc. Nos. 18-9, 18-10, 18-12, 18-14, 18-15.) In addition, in 2010, Vizcarrondo was suspended for failing to provide required documentation on weapons training by the appropriate deadline and received a written reprimand for failing to spray paint manhole covers in conjunction with identifying and mapping them after being directed to do so by a superior. (Doc. No. 18 at 136-38; Doc. Nos. 18-16, 18-17.) Finally, in 2013, Major Brian Evans completed a coaching session with Vizcarrondo after there were several problems with a Vulnerability Assessment conducted by Vizcarrondo. (Doc. No. 19-8.) During this same time frame, Vizcarrondo asserts he received scores of accommodations and certifications related to his work and training, although he does not point to any specific accommodations regarding his performance as a Lieutenant. (*See* Doc. No. 29 at 5; Doc. No. 29-2 at ¶ 4; Doc. No. 29-3.)

In July 2013, Vizcarrondo expressed interest via email in serving as the Administrative Lieutenant assisting Major Donald Redwood, and subsequently received the assignment. (Doc No. 18 at 27-29.) Serving as an Administrative Lieutenant was an assignment, not a promotion, but it did provide Vizcarrondo with an administrative office near the Warden and the Deputy Warden and was a potential pathway to the next highest rank, Captain. (*Id.* at 30; Doc. No. 29-2 at ¶ 7.) Shortly

after Vizcarrondo moved to his new office, Deputy Warden Garey Burt began greeting Vizcarrondo by saying, "Yo quiero Taco Bell." (Doc. No. 18 at 31-32.) Deputy Warden Burt continued using this phrase even after Vizcarrondo asked him to stop. (*Id.*) In October 2013, David Brown replaced Major Redwood and became Acting Major. Major Brown then took Vizcarrondo off the Administrative Lieutenant assignment, and instead assigned it to Lieutenant Leslie Rigby. (Doc. No. 21 at 72-73.) Both Major Brown and Lt. Rigby are African American. (Doc. No. 29 at 5.) In addition, Vizcarrondo asserts that all of the high-ranking officials at NERC at that time were African American. (Doc. No. 29-2 at ¶ 8.)

In contrast to Vizcarrondo's assignment as an Administrative Lieutenant, to apply for a promotion to another position, Vizcarrondo and other applicants used Ohio's online application system. ODRC would upload a job posting to the system, and identify the job title, duties, location, and minimum qualifications an applicant must have to hold each position. (Doc. No. 24-2 at ¶ 5.) After applicants submit their materials, an employee in the personnel office of the ODRC institution begins a screening process to identify individuals who meet the minimum qualifications and are appropriate for interview. (*Id.* at ¶¶ 5-8.) As part of this screening process, a reviewer objectively assigns points for each applicant based on the applicant's education, job related experience, and certifications onto a Subject Matter Expert Screening Form ("SME Form"). (*Id.* at ¶ 6.) Based on the screening, a group of applicants are selected to interview with a panel from the institution, typically three administrators who work in the department where the open position exists. (*Id.* at ¶ 7.) The interview panel then recommends an applicant for final approval by the appropriate appointing authority, which is the Warden at a correctional institution. (*Id.* at ¶ 8.)

In November 2013, Vizcarrondo applied for a Correction Captain opening at NERC. (Doc. No. 18 at 47; Doc. No. 19-12.) Vizcarrondo was selected to interview for the position, but the panel recommended another applicant, Lt. Rigby, for the position. (Doc. No. 18 at 48; Doc. No. 19-12.) The panel's recommendation was "based on Lt. Rigby's years of experience in custody and the fact that she served a year in a TWL capacity. Lt. Rigby currently serves as our Administrative Lieutenant which better prepared her for this position. Lt. Rigby is currently enrolled in College to obtain her degree." (Doc. No. 19-12.) According to their SME Forms, Vizcarrondo had about twenty-three years of experience at that time and a cumulative score of thirteen, while Rigby had about fifteen years of experience and a cumulative score of twelve. (Doc. Nos. 20-15, 28-9.) Warden LaShann Eppinger approved the panel's recommendation on February 6, 2014. (Doc. No. 19-12.) In January 2014, Vizcarrondo applied for another open Correction Captain position, but the position was awarded to Lieutenant Jack Johnson on February 6, 2014 as well. (Doc. No. 18 at 47; Doc. No. 19-14.)

Shortly thereafter, in March 2014, Vizcarrondo received his annual performance review. The review provided that "Lieutenant Vizcarrondo has a lot of potential, but needs to complete his Bachelor's Degree in order to advance in the ODRC." (Doc. No. 20-10 at 4.) Multiple ODRC personnel testified that this statement was inaccurate because, while education is taken into account in promotion decisions, a bachelor's degree is not a minimum requirement for advancement to Captain. (*E.g.*, Doc. No. 23 at 64-65.) For example, Lt. Rigby was promoted to Correction Captain without having a bachelor's degree. (*See* Doc. No. 19-12.)

In May 2014, Vizcarrondo dual-filed a charge of discrimination against ODRC with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission

("OCRC"). (Doc. No. 18-34.) Therein, Vizcarrondo alleged that ODRC discriminated against him based on his national origin—Hispanic—and his age in its decision to remove him from his Administrative Lieutenant position and in the promotions of Lt. Rigby and Lt. Johnson to Correction Captains instead of him. (*Id.*) During its investigation, the OCRC did not discover any information that raised an inference that ODRC discriminated against Vizcarrondo on the basis of his age or national origin. (Doc. No. 19-15.)[1] As a result, on March 25, 2015, the EEOC issued a right-to-sue letter notifying Vizcarrondo of the dismissal of his charges and the requirement that he bring any suit based on his charges within ninety days of receipt of the notice. (Doc. No. 19-17.)

In November 2014, Vizcarrondo applied for another promotion, this time for a Correctional Specialist position—also referred to as a Unit Manager. (Doc. Nos. 18-39, 20-23.) The interview panel recommended Lieutenant Kimberly Armour, who is African American, for the position, and Warden Eppinger approved the recommendation on December 10, 2014. (Doc. No. 18-39.) The SME Forms for Lt. Armour and Vizcarrondo show that Vizcarrondo had twenty-six years of experience at that time, no post-high school education, and a cumulative score of thirteen, while Lt. Armour had twelve and a half years of experience, a bachelor's degree from Youngstown State University, and a cumulative score of thirteen. (Doc. No. 20-23.)

Vizcarrondo asserts that these SME Forms are evidence of discrimination because the description of Lt. Armour's experience was more detailed than the description of his experience. (Doc. No. 29 at 14.) Vizcarrondo does not challenge the accuracy of the cumulative score, only that the written description of his tenure was less detailed than the written description of Lt. Armour's

---

[1] The OCRC did find that gender played a role in the promotion of another individual, but this finding was unrelated to Vizcarrondo's allegations. (Doc. Nos. 19-15, 19-24.)

tenure.  (*See* Doc. No. 20-23.)  Captain Johnson testified that he believed that such differing

descriptions on SME Forms are used to favor one candidate over another.  (Doc. No. 27 at 43, 46-

47.)  Captain Johnson also testified generally that he believed "that there is a mind-set at Northeast

Reintegration Center that if you are not of color you get substandard treatment.  You are held to a

different expectation and that expectation seems to be higher."  (*Id.* at 17.)  With regard to the

hiring process, Captain Johnson also stated that "the whole system is slanted and corrupt" and that

he has "sat on interview boards, knowing that there was a better candidate, and that candidate was

not selected for personal reasons."  (*Id.* at 14.)

    In March 2015, following Lt. Armour's promotion to Correctional Specialist, Vizcarrondo

filed his second charge of discrimination with the EEOC and OCRC, alleging the promotions of Lt.

Armour and Charles Washington (which Vizcarrondo no longer challenges) were in retaliation for

his previous charge of discrimination and discriminatory based on his age, race, sex, and national

origin.  (Doc. No. 18-40.)  On February 13, 2017, the EEOC issued a right-to-sue letter regarding

Vizcarrondo's charges, providing that the EEOC was unable to conclude that ODRC had committed

any violations and that suit must be brought within ninety days of receipt of the notice.  (Doc. No.

18-46.)

    On May 28, 2015, a few months after Vizcarrondo filed his second charge of discrimination,

Warden Eppinger issued Vizcarrondo a written reprimand for failing to report to the last mandatory

firearms training session, which put Vizcarrondo in jeopardy of losing his firearms certification.

(Doc. No. 18-42.)  In response, Vizcarrondo filed a grievance with ODRC appealing the reprimand.

(Doc. No. 18-43.)  Vizcarrondo asserted the reprimand was not justified because his car had broken

down the day of the training and he had followed the proper call-off procedures. (*Id.*) After a review of the grievance, Warden Sherry Clouser rescinded the reprimand. (*Id.*)

In addition to filing his grievance, Vizcarrondo also filed a charge with the EEOC and OCRC on June 15, 2015 in which he alleged that the written reprimand was in retaliation for filing his previous charges of discrimination against ODRC. (Doc. No. 18-44.) The EEOC issued a right-to-sue letter for this charge on March 9, 2018, again notifying Vizcarrondo that he had ninety days in which to bring suit. (Doc. No. 10 at 13.)

In April 2016, Major Evans recommended that Lieutenant Ken Chapman, who is African American, fill a Temporary Working Level ("TWL") position for Correction Captain that opened when the current Captain went on long-term leave. (Doc. No. 20 at 78-79.) Warden Clouser approved the recommendation. (*Id.*) After this decision, Vizcarrondo filed his fourth and final charge with the EEOC and OCRC. (Doc. No. 18-45.) Vizcarrondo asserted the failure to promote him to TWL Captain was in retaliation for his previous protected activity and discriminatory based on his race, age, and national origin. (*Id.*) The EEOC issued a right-to-sue letter for this charge on March 9, 2018 as well. (Doc. No. 10 at 14.)

In December 2016, Vizcarrondo applied for another Correction Captain position. The interview panel recommended Lt. Chapman for the position, and Warden Clouser approved the recommendation on February 7, 2017. (Doc. No. 19-23.) The interview panel's recommendation to Warden Clouser stated:

> Lt. Kenyon Chapman is recommended for selection for the position of Correction Captain. Lt. Chapman has over 18 years of correction experience that includes juvenile, city and adult corrections. He started his employment with the Northeast Reintegration Center as a Correction Officer, and Correction Counselor/Sergeant. He also served in different roles as Tools Control Officer, Rules Infraction Board (R.I.B.) Chair, and participated in regional Vulnerability Assessment Team. Lt.

7

Chapman holds a Bachelor of Science degree in Criminal Justice from Indian [sic] Wesleyan University.

(*Id.*) Vizcarrondo and Lt. Chapman's SME Forms show that Vizcarrondo had approximately twenty-eight years of experience at that time and a cumulative score of twelve, while Lt. Chapman had approximately nineteen years of experience and a cumulative score of fifteen. (Doc. Nos. 19-21, 19-22.) Warden Clouser testified that Lt. Chapman had a reputation for staying late, coming in early, filling in for shifts, taking on extra duties, and generally going above and beyond his assignments. (Doc. No. 20 at 82.) She also stated that Vizcarrondo "wasn't regarded in the same light as Lieutenant Chapman, as stepping up, filling in, helping," and that such characteristics are "important at a prison, that people have to rely on each other." (*Id.* at 81-82.)

Finally, in May 2017, Vizcarrondo applied for another Correctional Specialist position. The interview panel recommended Lieutenant Tuneisha Gibson, who is African American, for the position, and Warden Brandeshawn Harris approved the panel's recommendation on June 28, 2017. (Doc. No. 19-25.) The interview panel's recommendation provided:

> Ms. Tuniesha Gibson is recommended for selection as Correction Specialist because of her background, experience and performance during the interview. Ms. Gibson started her corrections career as a Corrections Officer at the Ohio State Penitentiary in January 2011, then promoted to the position of Correction Program Specialist at the Northeast Reintegration Center in September 2015. Ms. Gibson obtained her Bachelors [sic] Degree in applied Science fro [sic] Youngstown State University.

(*Id.*) Lt. Gibson also had experience as a Case Manager, an important factor for the Correctional Specialist position, which supervises Case Managers. (Doc. No. 23 at 93-94; Doc. No. 24-1 at ¶ 6.) Vizcarrondo also claims he had experience as a Case Manager, but ODRC disputes that. (Doc. No. 24-1 at ¶ 7; Doc. No. 29-2 at ¶ 9.)

8

One of the four members of the interview panels that recommended Lt. Gibson and Lt. Chapman was Deputy Warden Evans.  (Doc. Nos. 19-23, 19-25.)  Captain Johnson testified that he once heard Deputy Warden Evans comment that they could not fill a vacancy for a TWL Lieutenant position in "the new world of Vizcarrondo."  (Doc. No. 27 at 21.)  There is no evidence as to when Deputy Warden Evans made this comment and Captain Johnson did not ask Deputy Warden Evans to explain what the comment meant.  (*Id.* at 21-22.)

### b.  Procedural History

On June 1, 2018, Vizcarrondo filed suit against ODRC in this Court, alleging that ODRC had engaged in discriminatory and retaliatory conduct in violation of (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) the Ohio Civil Rights Act, Ohio Rev. Code § 4112; and (3) 42 U.S.C. § 1983.  (Doc. No. 1.)  After answering the Complaint, ODRC filed a Motion for Partial Judgment on the Pleadings that sought dismissal of Vizcarrondo's claims under the Ohio Civil Rights Act.  (Doc. Nos. 4, 6.)  Thereafter, Vizcarrondo withdrew his claims under the Ohio Civil Rights Act and filed an Amended Complaint.  (Doc. Nos. 7, 10.)

On April 29, 2019, ODRC filed its Motion for Summary Judgment, asserting that many of Vizcarrondo's claims should be dismissed on procedural grounds and that his claims fail on the merits.  (Doc. No. 24.)  Vizcarrondo filed a brief in opposition to ODRC's Motion for Summary Judgment on May 29, 2019, to which ODRC responded on June 12, 2019.  (Doc. Nos. 29, 30.)

## II.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in

favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### III.   Analysis

#### a.   42 U.S.C. § 1983

First, ODRC argues that it is entitled to summary judgment on Vizcarrondo's claims under 42 U.S.C. § 1983 because, as an instrumentality of the State of Ohio, ODRC cannot be sued under 42 U.S.C. § 1983.  (Doc. No. 24 at 12-13.)  Vizcarrondo did not respond to ODRC's argument on this issue.  The Court agrees with ODRC that summary judgment is appropriate with respect to Vizcarrondo's claims under 42 U.S.C. § 1983.

The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Consequently, multiple courts have found that ODRC is not a "person" subject to suit under 42 U.S.C. § 1983.  *E.g.*, *Peeples v. Dep't of Rehab. and Corr.*, No. 95–3117, 1995 WL 445714, at *1 (6th Cir. July 26, 1995) (affirming dismissal of § 1983 suit against the Ohio Department of Rehabilitation and Correction because "a state is not a 'person' subject to suit under § 1983"); *Henton v. Ohio Dep't of Rehab. and Corr.*, No. 1:19 CV 462, 2019 WL 4346266, at *1 (N.D. Ohio Sept. 12, 2019) ("The ODRC is an agency of the State of Ohio and, therefore, not a 'person' under § 1983 for the purposes of the statute.").  Therefore, the Court grants ODRC's Motion for Summary Judgment on Vizcarrondo's claims under 42 U.S.C. § 1983.

#### b.   Title VII

##### i.   May 2014 and March 2015 EEOC/OCRC Charges

Next, ODRC asserts that Vizcarrondo failed to file suit within ninety days of the EEOC's issuance of right-to-sue letters with respect to his May 2014 and March 2015 charges of discrimination, and that claims advanced in these two charges are therefore time-barred.  (Doc. No.

11

24 at 13.) In response, Vizcarrondo argues that all of his claims are related and should thus be considered together, or, alternatively, that even if these claims are barred, the underlying acts may be used as background evidence in support of his timely claims. (Doc. No. 29 at 19-21.) The Court finds that the claims advanced in Vizcarrondo's May 2014 and March 2015 charges of discrimination are time-barred, but that the underlying acts may be considered as background evidence in support of his timely claims.

"To recover in an employment-discrimination lawsuit filed under Title VII . . . a claimant must file a timely charge of discrimination with the EEOC." *Holden v. Atos IT Solutions & Services, Inc.*, No. 16–3715, 2017 WL 2819222, at *2 (6th Cir. Mar. 17, 2017) (citing 42 U.S.C. § 2000e–5(e)(1)). "If the EEOC dismisses the charge, it must notify the claimant of the dismissal and of the right to bring a civil action, and the claimant must do so within ninety days after receiving a right-to-sue letter." *Id.* (citing 42 U.S.C. § 2000e–5(f)(1)). Claims are time-barred if not filed within this ninety-day period. *Id.* Discrete discriminatory acts, such as transfer and promotional decisions, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

In addition, "the issuance of a subsequent right-to-sue letter will not revive claims that are time-barred." *Holden*, 2017 WL 2819222, at *2. For example, in *Adams v. Tennessee Dep't of Finance & Admin.*, the Sixth Circuit affirmed the dismissal of claims advanced in the plaintiff's first EEOC complaint in June 2002 as time-barred because the plaintiff failed to timely file suit after receiving notice of the EEOC's dismissal of those claims and his right to sue. 179 F. App'x 266, 271 (6th Cir. 2006). The court held that the plaintiff's "subsequent filing with the EEOC in November 2002 did not revive the claims of racial discrimination addressed in the first EEOC complaint." *Id.*

Likewise, in *Holden*, the plaintiff filed a charge of discrimination with the EEOC in April 2013 and received a right-to-sue letter with regard to that charge in May 2013. 2017 WL 2819222, at *1. The plaintiff then filed another charge in April 2014 and received a second right-to-sue letter in September 2014. *Id.* The plaintiff did not file suit on either charge until November 2014, and the court found that summary judgment was proper with respect to the discrimination claims arising from the plaintiff's first charge because the plaintiff "did not bring suit within the ninety-day limitations period, and because his claims cannot be revived by a subsequent charge of discrimination." *Id.* at *1-2; *see also Smith v. Univ. of Tennessee*, No. 2:18-cv-02803-JTF-jay, 2019 WL 5095794, at *3 (W.D. Tenn. June 20, 2019).

Here, Vizcarrondo dual-filed charges with the EEOC and OCRC in May 2014 and March 2015, and the EEOC issued right-to-sue letters with regard to those charges in March 2015 and February 2017, respectively. (Doc. Nos. 18-34, 18-40, 18-46, 19-17.) Vizcarrondo did not file suit against ODRC on these charges until June 2018, well past the ninety-day limitations period. (*See* Doc. No. 1.) The subsequent filing of additional charges against ODRC, even if related to the claims in Vizcarrondo's first two charges, cannot revive those claims. As a result, the claims advanced in Vizcarrondo's May 2014 and March 2015 dual-filed charges are time-barred. Specifically, Vizcarrondo is barred from bringing claims based on ODRC's alleged discrimination or retaliation with respect to the removal of Vizcarrondo from his Administrative Lieutenant position in October 2013, the failure to promote him over Lt. Rigby and Lt. Johnson in February 2014, and the failure to promote him over Lt. Armour in December 2014. (*See* Doc. Nos. 18-34, 18-40.) Therefore, summary judgment in favor of ODRC is appropriate with regard to each of these claims.

However, evidence of these prior acts may be considered as background evidence in support of Vizcarrondo's timely filed claims. *See Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

### ii. June 2015 EEOC/OCRC Charge

ODRC also asserts that summary judgment is warranted on Vizcarrondo's retaliation claim asserted in his June 2015 charge related to the written reprimand he received because the reprimand is not an adverse employment action. (Doc. No. 24 at 22.)[2] The Court agrees with ODRC and grants ODRC's Motion for Summary Judgment with regard to Vizcarrondo's retaliation claim based on his written reprimand.

Title VII prohibits retaliating against employees who oppose unlawful employment practices. *See* 42 U.S.C. § 2000e-3(a). To establish that a defendant engaged in retaliation in violation of Title VII, a plaintiff may rely on either direct or circumstantial evidence. *Daniels v. Pike Cty. Comm'rs*, 706 F. App'x 281, 291 (6th Cir. 2017). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008). Here, Vizcarrondo has not presented any direct evidence of retaliation with regard to the written reprimand he received.

In the absence of direct evidence, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). "Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation." *Goodsite v. Norfolk S. Ry. Co.*, 573 F. App'x 572, 582 (6th Cir. 2014). "If the

---

[2] ODRC also asserts that summary judgment is warranted because it had a legitimate, non-discriminatory reason for the reprimand and that there is no evidence of pretext. (Doc. No. 24 at 22-23.) Because the Court agrees with ODRC that the written reprimand is not an adverse employment action, the Court need not address this alternative argument.

plaintiff succeeds in making out the elements of a prima facie case, the burden of production shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions." *Id.* Finally, "[i]f the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the defendants' proffered reason was not the true reason for the employment decision." *Id.*

"To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the defendants knew of her protected activity; (3) thereafter, the defendants took 'materially adverse' actions against the plaintiff; and (4) the protected conduct was a but-for cause of the adverse action." *Id.* With respect to the third element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Applying this standard, the Sixth Circuit found that two written reprimands warning that future incidents of similar misconduct could lead to disciplinary action were not adverse employment actions. *Taylor*, 703 F.3d at 338. The Court found that "[a]lthough certain written reprimands could rise to the level of an adverse employment action," the reprimands at issue would not have dissuaded a reasonable worker from making a claim of discrimination because there was no evidence "that any disciplinary action resulted from these letters, or that these letters were related to a larger pattern of intimidation by constantly reprimanding [the plaintiff], for example." *Id.* Similarly, in *McDaniel v. Ohio Dep't of Rehab. and Corr.*, the court held that a written reprimand was not a materially adverse employment action when the plaintiff offered "no evidence that there

was a pattern of reprimands, that further discipline resulted from the reprimands, or that the reprimand would diminish her future prospects." No. 2:14-CV-0122, 2015 WL 7888759, at *11 (S.D. Ohio Dec. 4, 2015).

In this case, the reprimand issued to Vizcarrondo for failing to attend a mandatory firearms training did not result in any disciplinary action. The reprimand merely warned that "any future occurrence will result in progressive disciplinary action being imposed on you." (Doc. No. 18-42.) And other than a conclusory statement in his opposition brief (*see* Doc. No. 29 at 24), Vizcarrondo has not offered any support to show that the reprimand was part of a larger pattern of improper discipline. Moreover, the conduct that Vizcarrondo alleges is retaliatory is even less severe than the reprimands at issue in *Taylor* and *McDaniel* because ODRC actually rescinded the reprimand as a result of Vizcarrondo's grievance. (Doc. No. 18-43.) Thus, the Court finds that ODRC's actions would not have dissuaded a reasonable worker from making or supporting a charge of discrimination, and ODRC is entitled to summary judgment on Vizcarrondo's retaliation claim.[3]

### iii. April 2016 EEOC/OCRC Charge

ODRC argues that Vizcarrondo's discrimination claim arising from his April 2016 charge based on the failure to promote him to TWL Captain fails because the decision on the TWL Captain assignment does not constitute an adverse employment action and ODRC has put forth a legitimate, non-discriminatory reason for its decision. (Doc. No. 24 at 16-17.) Vizcarrondo failed to respond to

---

[3] Vizcarrondo's EEOC and OCRC charge with regard to the reprimand only asserted a claim for retaliation, not discrimination. (Doc. No. 18-44.) It is somewhat unclear in this case whether Vizcarrondo is also attempting to assert that the reprimand was discriminatory. To the extent he is attempting to assert such a claim, however, it would fail for the same reason as his retaliation claim because the reprimand is not an adverse employment action. *See Creggett v. Jefferson Cty. Bd. of Educ.*, No. 11–6375, 2012 WL 3104508, at *3 (6th Cir. Aug. 1, 2012) ("A written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action.").

ODRC's first argument and has put forth no evidence demonstrating that the non-selection of Vizcarrondo adversely affected his employment. As a result, summary judgment in favor of ODRC is appropriate.

Under Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As with retaliation claims, a plaintiff may rely on either direct or circumstantial evidence to establish that an employer engaged in discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Vizcarrondo has not offered any direct evidence of discrimination with respect to the TWL Captain assignment, and the Court will thus analyze his claims under the same *McDonnell Douglas* burden-shifting framework described above. *See Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

Under the *McDonnell Douglas* framework, as applied to discrimination claims, "the plaintiff faces the initial burden of presenting a prima facie case of unlawful discrimination." *Kroger Co.*, 319 F.3d at 866. To establish a prima facie case of discrimination, a plaintiff must "show that 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000). "The establishment of a prima facie case creates a rebuttable presumption of discrimination and requires the defendant to 'articulate some legitimate, nondiscriminatory reason' for taking the challenged action." *Kroger*, 319 F.3d at 866 (quoting *Univ. of Cincinnati*, 215 F.3d at

17

573).  Finally, "[i]f the defendant is able to satisfy this burden, the plaintiff must then 'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'"  *Id.*

ODRC challenges Vizcarrondo's ability to establish a prima facie case by asserting that the assignment of the TWL Captain position to Lt. Chapman instead of Vizcarrondo does not constitute an adverse employment action.  (Doc. No. 24 at 16-17.)  The "denial of a promotion, even if it is only to a temporary position, can constitute an adverse employment action."  *Elam v. D.C. Fire & EMS Dep't*, No. Civ.A. 03-1407(GK), 2005 WL 1903557, at *5-6 (D.D.C. July 19, 2005) (holding plaintiff suffered an adverse employment action when he did not receive a temporary promotion that would have increased his pay and provided increased supervisory duties); *Paige v. Donovan*, No. 09–cv–01811–WJM–CBS, 2011 WL 5520291, at *15 (D. Colo. Aug. 1, 2011) (finding plaintiff raised a genuine issue of material fact as to whether she suffered a materially adverse employment action when she was not selected for a temporary position that may have resulted in a temporary pay raise).  However, "[f]ailure to obtain temporary work assignments with no increase in salary and no change in work hours does not amount to an adverse employment action."  *Swann v. Time Warner Entm't Co., L.P.*, 126 F. Supp. 3d 973, 983 (S.D. Ohio 2015).  In addition, "generalized and speculative assertions of benefits that may accrue from a temporary post are insufficient."  *Gainer v. Brennan*, No. 2:17-CV-454, 2019 WL 2106378, at *6 (S.D. Ohio May 14, 2019) (quoting *Kangethe v. District of Columbia*, 206 F. Supp. 3d 661, 670 (D.D.C. 2016)).

In this case, Vizcarrondo failed to cite any evidence establishing that the TWL Captain assignment would have resulted in increased pay, additional supervisory duties, better work hours, or any other benefits.  And the Court "is not obligated to scour the record for evidence to support the opposition to summary judgment."  *Church Mut. Ins. Co. v. First United Pentecostal Church of*

18

*Parma*, No. 1:11CV2201, 2012 WL 3619812, at *7 (N.D. Ohio Aug. 21, 2012). As such, Vizcarrondo has not met his burden to establish a prima facie case of discrimination with regard to his non-selection for the TWL Captain position, and summary judgment in ODRC's favor is appropriate on this issue.[4]

### iv. Post-Charge Claims

#### 1. Failure to Exhaust Administrative Remedies

Vizcarrondo asserts that ODRC engaged in discrimination and retaliation against him when it promoted Lt. Chapman over him in February 2017 and when it promoted Lt. Gibson over him in June 2017. (Doc. No. 29 at 15-16.) Both of these acts occurred after Vizcarrondo filed his last charge with the EEOC and OCRC in April 2016, and there is no evidence that he amended any of his prior charges to include these new allegations. As a result, ODRC argues that these claims are barred because Vizcarrondo has failed to exhaust his administrative remedies. (Doc. No. 24 at 13-14.) Vizcarrondo once again responds that these claims are properly before the Court because they are related to his prior claims. (Doc. No. 29 at 19-21.) The Court finds that Vizcarrondo may bring his discrimination and retaliation claims related to Lt. Chapman's promotion and his retaliation claim related to Lt. Gibson's promotion, but is precluded from bringing his discrimination claim related to Lt. Gibson's promotion.

---

[4] Even if Vizcarrondo could show that his non-selection was an adverse employment action, he could not demonstrate that ODRC's proffered legitimate reason for selecting Lt. Chapman over him is pretextual. As discussed below, Vizcarrondo has not shown that he was as qualified as Lt. Chapman.

The Court also notes that Vizcarrondo appears to bring both retaliation and discrimination claims with regard to the TWL Captain assignment, but ODRC seems to address this issue only in the context of a discrimination claim. However, ODRC moved for summary judgment on all of Vizcarrondo's claims, and its arguments regarding whether the TWL Captain assignment was an adverse employment action and whether it had a legitimate reason for its decision warrant summary judgment on the retaliation claim as well.

"As a prerequisite to bringing suit under Title VII, a claimant must exhaust his or her administrative remedies." *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 470 (6th Cir. 2008). "A claimant exhausts his or her administrative remedies by filing a charge with the EEOC." *Maeder v. Hollywood Casino*, 97 F. Supp. 3d 941, 944 (S.D. Ohio 2015). The purpose of this exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). As a result, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* (quoting *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002)). Under this "expected scope of investigation test," "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* (quoting *Weigel*, 302 F.3d at 380).

"Generally, retaliation claims based on conduct that occurs after the filing of the EEOC charge can be reasonably expected to grow out of the charge." *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). "This is because 'retaliation claims, by definition, arise after the filing of an EEOC charge' and the purpose of this rule is to 'promote efficiency by requiring only one filing.'" *Ryan v. Shulkin*, No. 1:15-CV-02384, 2017 WL 6270209, at *10 (N.D. Ohio Dec. 8, 2017) (quoting *Johnston v. O'Neill*, 272 F. Supp. 2d 696, 705 (N.D. Ohio 2003)). Consequently, courts generally have concluded that retaliation claims based on conduct that occurred after the filing of an EEOC charge may be pursued in court without first being pled in an EEOC charge. *E.g.*, *Shulkin*, 2017 WL 6270209, at *10; *Maeder*, 97 F. Supp. 3d at 947 ("Defendant's exhaustion defense therefore does not apply to Plaintiff's retaliation claim."); *but see Scott*, 275 F. App'x at 474 (affirming dismissal of

post-EEOC charge retaliation claim that stemmed from an incident that occurred four years after the plaintiff filed her EEOC charge).

Discrimination claims based on post-EEOC charge conduct may also be reasonably expected to grow out of the charge when sufficiently factually related and close in time. For example, in *Johnston*, the court found that the plaintiff's age discrimination claim based on the denial of a promotion reasonably could have been expected to grow out of the plaintiff's original charge because "the second non-selection was one to two months after the first non-selection . . . and the theory of the claims are the exact same." 272 F. Supp. 2d at 705. Similarly, in *Beard v. Robertson Cty. Bd. of Educ.*, the court permitted the plaintiff to pursue claims for two denials of promotions that "happened shortly after she filed her EEOC charge" and were allegedly part of a continuing practice of failing to promote her. No. 3:08–cv–00829, 2010 WL 148413, at *5 (M.D. Tenn. Jan. 12, 2010).

On the other hand, "it is not reasonable to assume that the EEOC will investigate subsequent conduct that occurs during the pendency of its investigation absent some connection between that conduct and the conduct described in the charge." *Maeder*, 97 F. Supp. 3d at 946. As such, claims regarding subsequent conduct further removed or distinct from that alleged in a prior EEOC charge have been dismissed based on the plaintiff's failure to exhaust administrative remedies. *See id.* at 946-47 (granting motion to dismiss plaintiff's discriminatory termination claim for failure to exhaust administrative remedies because it was distinct from his claims that the defendant discriminated against him by disciplining him and denying him income opportunities); *Boyd v. Rich Products Corp.*, No. 10–2317–STA, 2011 WL 3585966, at *6 (W.D. Tenn. Aug. 16, 2011) ("Based on the inherent differences between her accommodation claim and her termination claim and the fact that the two

incidents happened some eight months apart, the Court holds that an EEOC investigation of Plaintiff's termination could not reasonably be expected to grow out of her charge.").

Applying these principles, the Court cannot conclude as a matter of law that Vizcarrondo's retaliation claims based on ODRC's failure to promote him over Lt. Chapman and Lt. Gibson could not reasonably have been expected to grow out of the investigation into Vizcarrondo's prior charges of discrimination and retaliation. As other courts have recognized, these retaliation claims, by definition, must have arisen after Vizcarrondo's prior charges, and he was not required to file yet another charge in order to exhaust his administrative remedies with respect to each claim. The Court comes to the same conclusion regarding Vizcarrondo's discriminatory failure to promote claim for the position that Lt. Chapman ultimately received. Vizcarrondo's April 2016 EEOC charge alleged that ODRC had discriminated and retaliated against him when it assigned Lt. Chapman to the TWL Captain position. (Doc. No. 18-45.) Only seven months later, Vizcarrondo applied for a permanent Correction Captain position, which ODRC again awarded to Lt. Chapman. (Doc. No. 19-23.) Thus, the same employee and exact same theories of misconduct are at issue as in Vizcarrondo's prior charge with the EEOC. The Court thus denies ODRC's Motion for Summary Judgment based on Vizcarrondo's failure to exhaust his administrative remedies for these claims.

However, there is no such close relation between Vizcarrondo's claim that ODRC discriminated against him when it promoted Lt. Gibson to Correctional Specialist and his prior EEOC charges. While the general theory of discrimination may be similar, Vizcarrondo's claim related to the promotion of Lt. Gibson involves an entirely new promotional opportunity and different employees. Moreover, Vizcarrondo did not apply for this position until over a year after he filed his last EEOC charge. As the Sixth Circuit has indicated, "[i]t is not reasonable to expect that the EEOC

22

would investigate other promotional opportunities that were not put in front of them." *Scott*, 275 F. App'x at 473. Therefore, the Court grants ODRC's Motion for Summary Judgment with respect to Vizcarrondo's discrimination claim based on ODRC's failure to promote him over Lt. Gibson.

### 2. Lt. Chapman's Promotion in February 2017

Because the Court has found that Vizcarrondo may assert his discrimination and retaliation claims related to the promotion of Lt. Chapman to Correction Captain, the Court will assess the merits of Vizcarrondo's claims. ODRC argues that Vizcarrondo's retaliation claim fails because he cannot establish the required causal connection and because ODRC had a legitimate reason for its decision. (Doc. No. 24 at 23-24.) ODRC does not appear to directly address Vizcarrondo's discrimination claim with regard to Lt. Chapman. However, ODRC's argument regarding its legitimate reason for its promotion decision is just as applicable to both Vizcarrondo's discrimination and retaliation claims, and the Court will thus analyze them together. The Court finds that ODRC has offered a legitimate, non-discriminatory, and non-retaliatory reason for its decision not to promote Vizcarrondo and that he cannot establish that this reason is pretextual. Accordingly, ODRC is entitled to summary judgment on this issue.

As noted above, in the absence of direct evidence of discrimination, the *McDonnell Douglas* burden shifting framework applies to both discrimination and retaliation claims. Assuming that Vizcarrondo could establish a prima facie case of discrimination and retaliation, ODRC has proffered a legitimate, non-discriminatory, and non-retaliatory reason for its actions. To meet this burden, a defendant "need not *prove* a nondiscriminatory reason for [its actions], but need merely *articulate* a valid rationale." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). ODRC asserts that Lt. Chapman was promoted instead of Vizcarrondo because Lt. Chapman was the more qualified candidate for the

position. (Doc. No. 24 at 23.) As such, ODRC has articulated a legitimate, non-discriminatory, and non-retaliatory reason for its failure to promote Vizcarrondo.

As a result, to survive ODRC's Motion for Summary Judgment, Vizcarrondo must "identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Tennial v. United Parcel Service, Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011)). A plaintiff can establish pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson*, 319 F.3d at 866 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). However, "[r]egardless of which option is used, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)).

"Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Philbrick v. Holder*, 583 F. App'x 478, 485 (6th Cir. 2014) (citations omitted). When comparing qualifications, summary judgment may be appropriate even though the plaintiff has more experience than the successful applicant. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 617 (6th Cir. 2003) (holding plaintiff failed to raise a genuine issue of material fact when "the Treasury Defendants acknowledged that [the plaintiff] had greater experience than Famuwera,

but explained that Famuwera's relatively high score was based on the fact that he had a more extensive educational background than [the plaintiff]").

Here, Vizcarrondo cannot show that he was as qualified as Lt. Chapman. Vizcarrondo's sole argument in support of his contention that he was as qualified, if not more qualified, than Lt. Chapman is that he had more years of experience at ODRC than Lt. Chapman. (Doc. No. 29 at 16.)[5] The Court finds this argument unpersuasive. As part of the application process for any open position, each applicant is scored on an SME Form in which points are objectively assigned based on the applicant's education, years of work-related experience, and certifications. (Doc. No. 24-2 at ¶ 6.) For example, five to nine years of experience is worth seven points, while ten to fourteen years of experience is worth eight points. (*See, e.g.*, Doc. No. 19-21.) Vizcarrondo claims that the reviewers filling out SME Forms can favor one candidate over another by including a more detailed description for the favored candidate's experience. (Doc. No. 29 at 14.) But this would not affect a candidate's score, which is calculated based solely on the total years of work-related experience, not the descriptive accounts of that experience. At the time of their applications, Vizcarrondo had approximately twenty-eight years of experience, while Lt. Chapman had approximately nineteen years of experience. (Doc. Nos. 19-21, 19-22.) However, Lt. Chapman had a bachelor's degree in criminal justice from Indiana Wesleyan University, while Vizcarrondo did not have any degrees beyond high school. (Doc. Nos. 19-21, 19-22, 19-23.) Based on these qualifications, Vizcarrondo had a cumulative score of twelve on his SME Form, and Lt. Chapman had a cumulative score of fifteen. (Doc. Nos. 19-21, 19-22, 19-

---

[5] Vizcarrondo references his background in the National Guard a couple of times in his opposition brief as another one of his qualifications, but provides no evidence in support of these statements. (Doc. No. 29 at 14, 23.)

23.)  Thus, under ODRC's objective scoring system, which took into account Vizcarrondo's advantage in terms of years of experience, Lt. Chapman was still the more qualified candidate.

Moreover, ODRC submitted additional evidence demonstrating that Lt. Chapman was more qualified than Vizcarrondo.  For instance, Warden Clouser, who approved the interview panel's recommendation that Lt. Chapman be promoted to Captain, testified that Lt. Chapman had a reputation for staying late, coming in early, filling in for shifts, taking on extra duties, and generally going above and beyond his assignments.  (Doc. No. 20 at 82.)  In contrast, Warden Clouser stated that Vizcarrondo "wasn't regarded in the same light as Lieutenant Chapman, as stepping up, filling in, helping," and that such characteristics are "important at a prison, that people have to rely on each other."  (*Id.* at 81-82.)  This assessment of Vizcarrondo is supported by the fact that Vizcarrondo had numerous reprimands and counseling sessions related to attendance and tardiness issues.  (Doc. Nos. 18-9, 18-10, 18-12, 18-14, 18-15.)   He also received a suspension, a written reprimand, and counseling for failing to properly handle assignments in 2010 and 2013.  (Doc. Nos. 18-16, 18-17, 19-8.)  Vizcarrondo has not cited to any evidence to show that Lt. Chapman had a similarly negative disciplinary history.  Finally, another reason for the panel's recommendation of Lt. Chapman was that he had served in a variety of roles during his tenure at ODRC, including Tools Control Officer and Rules Infraction Board Chair.  (Doc. No. 19-23.)  Again, Vizcarrondo offers nothing to show that his background included the same variety of positions.  Based on all of this, the Court concludes that no reasonable jury could find that Vizcarrondo was as qualified as Lt. Chapman.

Because Vizcarrondo was not as qualified as Lt. Chapman, neither Vizcarrondo's circumstantial evidence of discrimination—such as Captain Johnson's testimony, the "yo quiero Taco Bell" comments, and the bachelor's degree statement on his 2014 performance review—nor his

circumstantial evidence of retaliation—such as the "new world of Vizcarrondo" comment—is enough to establish that ODRC's proffered legitimate reason is pretextual. None of this evidence establishes that ODRC's proffered reason has no basis in fact, that it did not actually motivate ODRC's decision, or that it was insufficient to warrant the challenged conduct. Therefore, the Court grants ODRC's Motion for Summary Judgment on Vizcarrondo's discrimination and retaliation claims related to Lt. Chapman's promotion over him.

### 3. Lt. Gibson's Promotion in June 2017

Vizcarrondo's sole remaining claim is his retaliation claim related to Lt. Gibson's promotion over him in June 2017. ODRC argues that Vizcarrondo cannot establish the causal relationship necessary for a prima facie case of retaliation and that ODRC had a legitimate, non-retaliatory reason for its decision. The Court finds that Vizcarrondo cannot establish that ODRC's legitimate, non-retaliatory reason for its decision is pretextual.

Assuming that Vizcarrondo could establish a prima facie case of retaliation, ODRC has articulated a legitimate, non-retaliatory reason for its actions in that Lt. Gibson was the better qualified candidate. As a result, Vizcarrondo must show that this reason is pretextual. Vizcarrondo again points to his advantage in terms of years of experience to show that Gibson's promotion was retaliatory, as Lt. Gibson only had about six years of experience when she applied for the Correctional Specialist position for which she was promoted over Vizcarrondo. (Doc. No. 20-26.) On the other hand, Gibson had a bachelor's degree in applied science from Youngstown State University, whereas Vizcarrondo still did not have any degrees beyond high school. (Doc. No. 19-25.) The interview panel also stated that Gibson performed well during her interview (*id.*), and there is no evidence that Gibson had the same negative disciplinary history as Vizcarrondo. Gibson also had experience as a

Case Manager, which was an important factor for the Correctional Specialist position, which supervises Case Managers. (Doc. No. 23 at 93-94; Doc. No. 24-1 at ¶ 6.) However, Vizcarrondo claims to have had experience as a Case Manager as well. (Doc. No. 29-2 at ¶ 9.) Assessing this evidence, the Court finds Vizcarrondo has raised a question of fact as to whether he was as qualified as Lt. Gibson, although he has not shown that he was so plainly the superior candidate, such that no reasonable employer would have chosen Lt. Gibson over him.

Thus, Vizcarrondo can survive summary judgment if he is able to point to other probative evidence of ODRC's retaliation against him. The Court finds that he is unable to do so. The challenged promotional decision did not occur until over a year after Vizcarrondo filed his last charge with the EEOC and OCRC. (*See* Doc. Nos. 18-45, 19-25.) As a result, the temporal proximity between Vizcarrondo's protected activity and the challenged decision does not weigh in his favor. *See, e.g.*, *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) ("[B]ecause the disciplinary actions occurred two to five months after Hafford filed charges, and are fairly evenly spread over a period of time, the inference of a causal connection based on temporal proximity alone is tenuous."). In addition, the only relevant evidence cited by Vizcarrondo with regard to his retaliation claim is Captain Johnson's testimony that Deputy Warden Evans once commented that they could not fill a vacancy for a TWL Lieutenant position in "the new world of Vizcarrondo." (Doc. No. 27 at 21.) There is no evidence as to when Deputy Warden Evans made this comment and Captain Johnson did not ask Deputy Warden Evans to explain what the comment meant. (*Id.* at 21-22.) Although Deputy Warden Evans was one of the four members of the interview panel for the Correctional Specialist position, such a stray and isolated comment apparently unconnected to the promotional decision at issue is not sufficient evidence on which a reasonable jury could find ODRC's proffered reason to be

pretextual. Accordingly, ODRC's Motion for Summary Judgment is granted with respect to Vizcarrondo's retaliation claim based on Lt. Gibson's promotion over him.

### v. January 2019 Administrative Leave

For the first time, in his opposition to ODRC's Motion for Summary Judgment, Vizcarrondo asserts that ODRC retaliated against him for filing the present lawsuit by placing him on administrative leave in January 2019. (Doc. No. 29 at 16.) The Court agrees with ODRC that Vizcarrondo has failed to properly assert any claim related to this allegation in this case, as "[i]t is well-established that a complaint cannot be amended in a brief opposing a motion for summary judgment." *Heru v. Ohio*, No. 2:17-cv-658, 2019 WL 4413041, at *2 (S.D. Ohio Sept. 16, 2019). Vizcarrondo never amended his complaint to include this new charge, and he may not do so by including it for the first time in his opposition brief. *See Hubbard v. Select Portfolio Servicing, Inc.*, No. 16-cv-11455, 2017 WL 3725475, at *3 (E.D. Mich. Aug. 30, 2017) ("Hubbard cannot amend his complaint, which is the operative pleading in this matter, by simply including new factual allegations in his briefing in opposition to the motions for summary judgment.").

## IV. Conclusion

For the reasons set forth above, ODRC's Motion for Summary Judgment (Doc. No. 24) is GRANTED.

**IT IS SO ORDERED.**


 *s/Pamela A. Barker*
PAMELA A. BARKER
Date: November 22, 2019          U. S. DISTRICT JUDGE